**John M. DAVIS and Sigred B. Lanoux, Appellants,**

**v.**

**Harold George BURROWS and Stephen John Hepworth, Appellees.**

**Patent Appeal No. 9167.**

United States Court of Customs and Patent Appeals.

March 21, 1974.

Sol Schwartz, Wilmington, Del., attorney of record, for appellants. A. Newton Huff, Wilmington, Del., of counsel.

Herbert M. Adrian, Jr., Charlotte, N. C., (Adrian & Sayko, Charlotte, N. C.), attorney of record, for appellees. Thomas J. Morgan, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This is an appeal from the decision of the Board of Patent Interferences awarding priority to appellees, the senior party.

Although appellees' U.S. application (S.N. 557,631, June 15, 1966) was filed

later than appellants' U.S. application (S.N. 546,593, May 2, 1966), appellees rely under 35 U.S.C. § 119 on three of their British applications.[1] These antedate appellants' U.S. application, and none was filed more than one year prior to the date of filing of appellees' U.S. application.

The invention concerns nylon fibers containing hexamethylene diammonium phenylphosphonate (an organic salt). The salt, which results from reacting hexamethylene diamine and phenlyphosphonic acid, can be formed in situ during the polymerization of the nylon or preformed and added as such.

The only count reads: "A synthetic polycarbonamide filament containing hexamethylene diammonium phenylphosphonate."

### Proceedings Below

The examiner accorded appellees the benefit of their British I application as inherently disclosing that the salt of the count is formed in situ, this being confirmed by the disclosure in British II and by appellants' own disclosure,[2] and granted appellees' motion to shift the burden of proof. For the purpose of showing that appellees' British I does not support the count, appellants produced an ex parte affidavit by one Dr. Ivan Keith Miller stating that none of the salt of the count was extracted from certain filament polymers during certain tests and concluding, therefore, that the salt was not present in the filament ploymer. Appellants also submitted a statutory declaration under Rule 282

made by appellee Burrows in connection with a British opposition proceeding and stating his agreement with certain conclusions in the Miller affidavit.

The board pointed out that the Miller affidavit was not evidence taken in accordance with Rule 271, et seq; also, that the starting materials recited in the affidavit, unlike the common method of preparation employed by both parties to produce the composition of the count, included a copper salt, so that the affidavit was not pertinent to appellees' disclosure in British I. The board determined that the statutory declaration did not constitute evidence that the count is not supported in either British I or British II because the conclusions related to polymerization in the presence of potassium iodide and cupric acetate, neither of which is disclosed as present by the British applications. Accordingly, it concluded that the examiner properly accorded appellees the benefit of their British I application.

In response to appellants' argument that appellees cannot be allowed the benefit of British II under 35 U.S.C. 119, third paragraph,[3] because British I had not been shown to have been "withdrawn, abandoned, or otherwise disposed of," the board stated that said third paragraph relates to use of a subsequently filed foreign application in the nature of a continuing application; that if, as appellants contend, British I does not disclose the composition of the count, British II, which does, would of necessity become the "first filed" application for purposes of 35 U.S.C. § 119.

1. British I (26,596), June 23, 1965; British II (6,130), February 11, 1966; and British III (17,917), April 25, 1966.

2. Appellants' application states: "The hexamethylene diammonium phenylphosphonate may be formed separately and added to the salt solution or the reaction mixture or it may be formed *in situ.*"

3. The third paragraph provides: "In like manner and subject to the same conditions and requirements, the right provided in this

section may be based upon a subsequent regularly filed application in the same foreign country instead of the first filed foreign application, provided that any foreign application filed prior to such subsequent application has been withdrawn, abandoned, or otherwise disposed of, without having been laid open to public inspection and without leaving any rights outstanding, and has not served, nor thereafter shall serve, as a basis for claiming a right of priority."

*Opinion*

Since there is no argument over the fact that appellees' U.S. application supports the count, the basic issue is whether the count finds support in appellees' British I application. Appellants contend that nowhere in British I is there a recitation of a polycarbonamide filament containing hexamethylene diammonium phenylphosphonate. However, Example 1 of British I calls for reacting hexamethylene diammonium adipate (the material from which the claimed polycarbonamide filament is prepared) with hexamethylene diamine and phenyl phosphonic acid in an aqueous solution which, as appellants state in their brief, produces the salt of the count. A table in British I shows improved dyeability of the yarns produced in the examples, and the application concludes with the statement:

> As can be clearly seen from the table, yarns containing phosphonic acid residues have greatly enhanced receptivity to acid dyestuffs compared with the yarns not containing phosphonic acid residues.

 It is our opinion that the phrase "phosphonic acid residues" resulting from a reaction such as that specified by Example 1 is merely another way of expressing the salt of the count as having been formed in situ and that British I, therefore, directly supports the count, albeit not in haec verba. If there were any doubt, this conclusion is confirmed by British II and by appellants' own application. Use of British II for such a confirmatory purpose is not giving it the kind of "effect" envisaged by 35 U.S.C. § 119 which would require that British I be "withdrawn, abandoned, or otherwise disposed of," nor does it diminish the adequacy of the British I disclosure for purposes of 35 U.S.C. § 112. Also, we agree with the board that appellants, having themselves disclosed that the salt of the count may be formed in situ, are in no position to urge that the similar process of appellees does not similarly produce the salt of the count. Vogel v. Jones, 486 F.2d 1068, (CCPA 1973).

Inasmuch as we have already expressed the opinion that British I directly supports the count, we find it unnecessary to decide the "inherency" issue raised by appellants.

In view of the foregoing, we hold that the board correctly determined that appellees' British I supports the count.

It appearing that approximately one-half the material added to the record is relevant to the issues on appeal, costs of one-half of such material are charged to appellants and the other one-half to appellees.

Affirmed.